**COTHRON AVIATION, INC. and
Truman Blankenship
Appellants,**

v.

**AVCO CORPORATION Appellee.**

No. 2–91–277–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 8, 1992.

Rehearing Overruled Jan. 19, 1993.

Gardere & Wynne, Fred J. Meier, Dallas, for appellants.

Cowles & Thompson, R. Brent Cooper, Michael W. Huddleston, and Teresa G. Bohne, Dallas, for appellee.

Before MEYERS and DAY, JJ., and CLYDE R. ASHWORTH, J. (Retired, Sitting by Assignment).

## OPINION

MEYERS, Justice.

Appellants, Cothron Aviation Inc. and Truman Blankenship, and appellee, AVCO Corporation, were defendants below in a suit brought by Michael Davis Stewart and Geraldine Fallin Stewart, individually and next of friend of Mary Ada Stewart, Michael Davis Stewart Jr., and Elizabeth Anna Stewart, minors, arising out of the crash of a private airplane. Both appellants and appellee settled with the plaintiffs. Appellants brought a third-party claim against appellee. The trial court dismissed this claim by granting appellee's motion for summary judgment. Both parties appeal that ruling.

We reverse and remand in part and affirm in part.

## A. PROCEDURAL HISTORY

This case arose when the Stewarts sued appellants and appellee for injuries sustained in an airplane crash. Appellant Blankenship owned the airplane. Appellant Cothron leased the airplane from appellant Blankenship and in turn leased the airplane to Michael Stewart, plaintiff below. Appellee manufactured and designed the engine in the airplane.

The crash occurred when Stewart was flying the airplane. The airplane's engine lost all power so Stewart attempted to make an emergency landing. When he did, he lost control of the airplane and it flipped over. In the crash, Stewart sustained injuries and the airplane was damaged.

After plaintiffs brought this suit against appellants and appellee, appellants filed a cross-claim against appellee for property damage of $27,596.02 to its aircraft, contribution, and indemnity. They claimed that appellee was solely responsible for the engine failure compelling the emergency landing which caused the damage to the airplane. Subsequently, the plaintiffs settled their claims with appellants and appellee.

Appellants and appellee then entered into negotiations concerning the possible settlement of appellants' claims against appellee. Letters and documents concerning the settlement were sent back and forth between the parties' attorneys. Pursuant to these letters, a settlement check for the exact amount of appellants' property damage claim was tendered to appellants although it was never cashed. Further, a witness was tendered for deposition.

Several months later, appellants brought an amended third-party action against appellee. They alleged strict liability for defective design of the engine, breach of implied warranties, negligence, property damages, and indemnity. Appellee answered with a general denial and affirmative defenses of accord and satisfaction, payment, release, and waiver. It also filed a first amended counterclaim, alleging that the negotiations resulted in a contract for settlement and release of appellants' claims against it. Appellee based these contentions on the letters and documents which discussed the settlement, the tendered check, and the deposition.

Appellants subsequently filed a motion for partial summary judgment and appellee filed a motion for summary judgment. The

basis of appellee's motion was the existence of a settlement agreement which satisfied TEX.R.CIV.P. 11, while the basis of appellants' motion was their denial of the existence of a valid settlement agreement satisfying rule 11. Appellants also claimed that even if there was a valid rule 11 settlement agreement, it only concerned the aircraft's hull damage.

The trial court denied appellants' motion for partial summary judgment. It granted appellee's motion for summary judgment and ordered appellants to take nothing based upon the existence of a rule 11 settlement agreement. The court ordered appellee to tender the settlement check to appellants for full release of their claims.

## B. POINTS OF ERROR

 Appellants bring two points of error claiming that the trial court incorrectly: 1) granted appellee's motion for summary judgment; and 2) denied their motion for summary judgment. They support their points of error by arguing that the settlement agreement was not enforceable as a consent judgment or as a contract. They also argue that even if there was a contract it only concerned hull damages or there is at least a genuine issue of material fact as to its scope. They further argue that appellee did not meet rule 11 requirements, so any settlement agreement reached is unenforceable. Next, they argue there are no equitable considerations warranting its enforcement even if it did not meet rule 11 requirements. Finally, appellants argue the trial court erroneously awarded appellee attorney's fees. Appellee's cross-point of error argues that the trial court incorrectly reduced their award of attorney's fees pursuant to appellants' motion to reduce.

We hold that because this case does not involve an agreed judgment, the summary judgment can only be upheld if there was 1) a valid settlement agreement which also meets 2) the procedural requirements of rule 11. With this in mind, we hold that there is a genuine issue of material fact as to whether the parties intended to enter into a settlement agreement before a for-

mal contract was executed. Because there is a genuine issue of material fact as to whether the parties entered into a settlement agreement, we do not determine whether the procedural requirements of rule 11 were met or whether equity demands enforcement even if the procedural requirements of rule 11 were not met.

## C. SUMMARY JUDGMENT STANDARD

 We begin our review by noting our role in this process. In a summary judgment case, the issue on appeal is whether the movant met its burden for summary judgment by establishing that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against it. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence in the light most favorable to the nonmovants. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovants will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex. 1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovants and any doubts resolved in their favor. *Montgomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47.

## D. ENFORCING A SETTLEMENT AGREEMENT

Now we review the trial court's ruling granting summary judgment on the basis of a rule 11 settlement agreement. Rule 11 requires an "agreement between attorneys or parties touching any suit pending," to "be in writing, signed and filed with the

papers as part of the record, or ... made in open court and entered of record." Tex. R.Civ.P. 11. Appellants' first argument is that rule 11 further requires the filing of an agreement *before* it is disputed.

They are effectively arguing that when consent to an agreement is withdrawn before rule 11 is complied with, a judgment cannot enforce the agreement. However, we note that consent is only required for an agreed judgment. The summary judgment in this case is not an agreed judgment. *See Hill v. Bellville Gen. Hosp.*, 735 S.W.2d 675, 678 (Tex.App.—Houston [1st Dist.] 1987, no writ) (summary judgment entered without consent is not an agreed judgment).

Further, a valid settlement agreement which meets rule 11 requirements does not have to be enforced by way of an agreed judgment. *See Stewart v. Mathes*, 528 S.W.2d 116, 118–19 (Tex.Civ.App.—Beaumont 1975, no writ). Rule 11 is merely a procedural threshold to the enforcement of an agreement. *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984); *Massey v. Galvan*, 822 S.W.2d 309, 317 (Tex.App.—Houston [14th Dist.] 1992, writ denied). "Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments." *Kennedy*, 682 S.W.2d at 528. The rule gleaned from this statement is that an agreement must be substantively enforceable, whether by consent judgment or by other method, even if it meets the procedural requirements of rule 11. In this case, the settlement agreement could be enforced in a summary judgment without consent as long as it meets rule 11 requirements and it is an enforceable contract. *Stewart*, 528 S.W.2d at 118–19; *Ortega–Carter v. American Int'l Adjustment*, 834 S.W.2d 439, 442 (Tex.App.—Dallas 1992, writ denied). This is because settlement agreements are governed by contract law. *Adams v. Petrade Int'l*, 754 S.W.2d 696, 715 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Hernandez v. Telles*, 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ); *Stewart*, 528 S.W.2d at 118.

**E. SUBSTANTIVE REQUIREMENTS OF A CONTRACT**

■ Appellants argue that the correspondence does not form a contract, so it is not an enforceable settlement agreement. In Texas, the applicable rule of law is that "[w]here several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other." *Board of Ins. Comm'rs v. Great S. Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951); *Page Airways v. Associated Radio Serv. Co.*, 545 S.W.2d 184, 189 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). A binding agreement may be collected from various writings between parties so long as such different writings do not conflict in respect to the terms, parties, and the like. *Massey*, 822 S.W.2d at 315; *Graham Constr. Co. v. Walker Process Equip.*, 422 S.W.2d 478, 482 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

However, the crux of appellants' argument is that the parties intended to execute a formal contract before they entered into an enforceable settlement agreement. Appellee argues that a formal writing would merely be a "convenient memorial" in this case because the parties had agreed to the terms of the contract and complied with those terms.

■ Appellee is correct that parties may enter into an oral contract even though they are contemplating a formal writing. *Simmons & Simmons Constr. Co. v. REA*, 155 Tex. 353, 286 S.W.2d 415, 417 (1955); *see Scott v. Ingle Bros. Pac.*, 489 S.W.2d 554, 555–56 (Tex.1972) (question of fact for the jury). When this happens, the subsequent writing is merely a "convenient memorial" of the agreement. *Premier Oil Ref. Co. v. Bates*, 367 S.W.2d 904, 907 (Tex.Civ.App.—Eastland 1963, writ ref'd n.r.e.).

The "convenient memorial" doctrine is our way of determining whether an agreement between parties was to take effect only when a formal written contract had been executed. *Id.* "Parties rarely express a direct intention as to the moment

when they conceive themselves to be bound by a contract." *Simmons,* 286 S.W.2d at 417. "As a consequence intention is usually an inference to be drawn by the fact finder from other facts and circumstances in evidence." *Id.; see Baker v. Howard,* 799 S.W.2d 450, 452 (Tex.App.—Waco 1990, no writ) (intent is a fact issue for the jury).

## F. REVIEWING THE SUMMARY JUDGMENT PROOF

We review the correspondence between the parties' attorneys to determine whether the parties intended to enter into the agreement without a formally executed contract. The first letter was sent by appellee's attorney, Mathew Witt. Dated November 3, 1989, this letter offers $15,000 to settle appellants' hull damage claim against appellee. Witt's next letter, dated November 28th, offers the tender of $27,596.02 for the hull damage claim. The letter states that the tender may be withdrawn if appellee is required to continue defending the suit or present witnesses for deposition.

On February 6, 1990, a letter of "acceptance" for this proposal was sent by appellants' attorney, Fred Meier. This letter states that "in exchange we will sign a full release of all claims with respect to our third party claim" against appellee. This "acceptance" is conditioned on appellee presenting witnesses for deposition. On February 9th, Witt notified Meier that he would send a settlement agreement in accordance with the "concerns" of Meier's letter. Witt wrote: "I am glad we were able to settle this to the mutual advantage of our clients."

The settlement documents were sent to Meier on March 5th. These documents were: an Agreed Motion for Dismissal; an Agreed Order of Dismissal; and the Compromise Settlement Agreement and Full Release of Claims. These documents released appellee from all of appellants' claims, reflecting Meier's letter of February 6th. On March 14th, Meier sent revised documents to Witt for approval. He asked appellee to prepare the settlement check in order to enable the parties to exchange the signed release documents for the check. In a letter dated March 15th, Witt asked to review the modified text; he apparently had not yet received Meier's March 14th letter. Meier's next letter, dated March 19th, informed Witt that the signed documents would be forwarded to him as soon as they were returned from appellants. On March 21st, Witt sent the check to Meier, asking that neither Meier nor appellants endorse it until appellants signed and returned the documents.

However, on May 15th, a letter from Meier indicated that Witt was aware that the proposed settlement had been under further review because of the release for the indemnity and contributions claims. The letter informed Witt that appellants decided to reject the proposed settlement. The tendered check was returned. Meier's last letter in the record is dated June 12th. This letter returns the settlement draft, stating in clear terms that the settlement had not been negotiated and would not be negotiated. The letter further revokes approval for a consent judgment.

Viewing this evidence in the light most favorable to appellants, we hold that appellee did not prove as a matter of law that a formal contract was merely a "convenient memorial." Appellee's attorney, Witt, was the first to offer to reduce the terms to writing. The documents, written by Witt, had places for the parties' signatures. Both attorneys' acts indicate that the parties' official assent to the documents was necessary. Meier requested an exchange of the check with the formally executed contract. Witt requested Meier to hold the check until the agreement was signed and delivered.

" '[A] writing is necessary only when at least one of the parties has sufficiently expressed his intention not to be bound without one.... If the reduction of the agreement to writing is thus made necessary, an assent to the writing as a sufficient one must also be manifested; this manifestation commonly consists of signing and delivery.' Corbin on Contracts, Vol. 1, §§ 31 and 32, pp. 85 and 92." *Simmons,* 286 S.W.2d at 418 (footnote omitted). The reasonable inference from the evidence is

that both parties' awaited assent to the writing through the manifestation of their signatures. We cannot hold that a settlement agreement was entered into before it was formally executed. Thus, we sustain appellants' first point of error and hold that the trial court erroneously granted summary judgment in appellee's favor. Because we have reversed the trial court's holding on this point, appellee is not entitled to attorney's fees. *LaFreniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984).

At this point, we consider whether the court should have granted appellants' motion for summary judgment. Reviewing the above evidence in appellee's favor, we cannot say that the evidence proves that the parties intended to execute a formal contract before they would be bound to the contract. From February 9th on, Witt refers to the settlement agreement as if it is complete and binding. Appellee tendered the check and a witness for deposition, pursuant to the agreement. The reasonable inference from these actions is that the parties' only intent with regards to a formal document was that it be a "convenient memorial."

The inferences from the evidence conflict as to whether the parties intended to enter into an agreement without a formally executed contract. Because of this, we can only conclude that there is a genuine issue of material fact as to whether the parties intended to execute a formal contract. Thus, we uphold the trial court's denial of appellants' motion for partial summary judgment. Because there is a genuine issue of material fact as to the formation of a contract, we do not determine its terms, whether it meets rule 11 procedural requirements, or whether it should be enforced as a matter of equity even if it did not meet rule 11 requirements.

There is a genuine issue of material fact as to whether the parties intended to enter into a settlement agreement before a formal contract was executed. Thus, we reverse the trial court's grant of summary judgment and attorney's fees in appellee's favor and remand to the trial court for proceedings consistent with this court's

opinion; and affirm the trial court's denial of summary judgment in appellants' favor. Costs on appeal are to be divided equally between appellants and appellee.